PHILLIP A. TALBERT
United States Attorney
KEVIN C. KHASIGIAN
Assistant U. S. Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone:  (916) 554-2700

Attorneys for the United States

# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>APPROXIMATELY $419,930.00 IN U.S. CURRENCY,<br><br>        Defendant. | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

The United States of America, by and through its undersigned attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Action:

## NATURE OF ACTION

1.      This is a civil action *in rem* to forfeit to the United States Approximately $419,930.00 in U.S. Currency ("defendant currency") involved in violations of federal drug laws.

2.      The defendant currency was seized from the YRC Freight Facility at 1535 Pescadero Avenue, Tracy, California on December 27, 2016.  The defendant currency is in the custody of the U.S. Marshals Service, Eastern District of California.

///

///

## JURISDICTION AND VENUE

3. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a), and over this particular action under 21 U.S.C. § 881.

4. This district is a proper venue pursuant to 28 U.S.C. § 1355 because the acts giving rise to this *in rem* forfeiture action occurred in this district, and pursuant to 28 U.S.C. § 1395 because the defendant currency was seized in this district.

## FACTUAL ALLEGATIONS

5. On December 27, 2016, Detective Brett Hicks of the Tracy Police Department received information about a suspicious shipment being sent via "YRC freight" bearing Bill of Lading PRO: #669-339144-8. The freight package was sent from "Best City Steel" at 172 Scott Avenue, Brooklyn, NY 11237 to "T C Steel," ATTN: H. Chen, 2246 Jerrold Ave 1, San Francisco, CA 94124. The shipment, labeled as "Metal Product" and weighing 500 pounds, consisted of a single cardboard box, with clear packing tape wrapped around the edges. A plywood crate was visible through the clear tape and the shipment had expedited stickers on the outside, indicating the sender paid additional money to accelerate shipping. The only telephone number on file with YRC Freight associated with the shipment, 917-655-6471, was assigned to the intended recipient, "H. Chen."

6. Also on December 27, 2016, Detective Hicks obtained a California State Search Warrant for the shipment from San Joaquin County Superior Court Judge Richard Vlavianos. Upon execution of the warrant and opening the shipment, Detective Hicks found a Ridgid job box, which was locked with two separate combination locks, as well as several folded cardboard boxes. Inside the Ridgid job box, Detective Hicks observed a large black cloth sack containing nine separate vacuum-sealed plastic bags, each containing a large amount of cash. The cash was packaged in numerous rubber band-bound stacks, some which had paper labels indicating the stack contained $2,000.

7. The freight parcel and the cash inside were separately presented to a Tracy Police Department drug dog trained to alert to the presence of a narcotic odor. The drug dog positively alerted to the presence of the odor of narcotics on both the cash found and the freight package.

8. The cash and the vacuum sealed bags was comprised of various denominations, mostly $20 bills, and totaled $419,930.00. The currency was specifically denominated as follows: 293 $100 bills; 1,215 $50 bills; 16,487 $20 bills; and 14 $10 bills.

9. On December 28, 2016, Detective Hicks transported the cash to a Wells Fargo Bank branch and converted the cash into a cashier's check. While transferring the cash to the bank, Detective Hicks could smell a pungent odor of marijuana emanating from the cash.

10. On December 28, 2016, Detective Hicks placed a recorded telephone call to telephone number 917-655-6471, the number associated with the shipment in question. An apparent male voice answered the telephone and Detective Hicks asked if the person who answered the telephone was "Chen." The male stated, "No." Detective Hicks told the individual he was calling about the YRC shipment associated with this telephone number and again asked if he was speaking to "Chen." The individual clarified that his name was indeed Chen, and that his first name was "Han." Detective Hicks identified himself as a police officer and asked Chen if there was any reason a narcotic trained drug dog would alert to the shipment or if there was anything illegal or unsafe inside. Chen stated that he did not think there was anything illegal inside. Detective Hicks asked Chen if there were any drugs inside the shipment. Chen answered in the negative.

11. Detective Hicks then asked Chen if he expected any cash inside the shipment, and he responded "no." Chen explained the package was from New York and contained only a toolbox. Detective Hicks told Chen that he (Detective Hicks) had opened the shipment and found cash inside, and he again asked Chen about the cash. Chen responded, "Really?" Detective Hicks asked for Chen's date of birth to better ascertain his connection to the shipment. Chen declined to answer, saying that information was "private." Chen refused to say if the seized cash belonged to him and asked Detective Hicks to call him tomorrow. Chen ultimately refused to tell police if he was expecting any cash in the shipment.

12. On January 12, 2017, Special Agent R.J. Britt ("SA Britt") performed a query of the Lexis-Nexis search engine and learned that there was an individual by the name "Han Chen", A.K.A "Hanhe Chen" associated with the address located at 2246 Jerrold Avenue, Suite #1, San Francisco, CA. The 2246 Jerrold Avenue address is the same address listed for "H. Chen" on the shipment

3

containing the $419,930 in cash. The same query revealed that Han Chen is associated with the business entity "T C Steel" located at 4833 Mission Street, San Francisco, CA, the same entity which was also listed as a recipient of the shipment. There were also several additional addresses associated with the entity "T C Steel" located in San Francisco, Emeryville, Petaluma, and Upland, CA. It is unknown at this time if "T C Steel" is a legitimate business. On January 17, 2017, SA Britt performed a Google query of "T C Steel" and learned that the company appeared to have no formal website. SA Britt called the online listed telephone number associated with "T C Steel." The telephone call was answered by a male voice who simply said "Hello?" to include nothing about "T C Steel" in his greeting.

13. SA Britt then performed both a Lexis-Nexis Law Enforcement Solutions query, as well as a Google query of the sender of the shipment, "Best City Steel" located at 172 Scott Avenue, Brooklyn, NY. SA Britt could not find any legitimate business record in the name "Best City Steel" or any association with the address listed for it.

14. For the complete details of the investigation see the Affidavit of Richard J. Britt In Support of Seizure Warrants, Special Agent with the Drug Enforcement Administration, dated January 25, 2017, attached hereto and incorporated herein as Exhibit A.

### FIRST CLAIM FOR RELIEF
### 21 U.S.C. § 881 (a)(6)

15. Paragraphs one to fourteen above are incorporated by reference as though fully set forth herein.

16. The defendant currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it was money furnished and intended to be furnished in exchange for a controlled substance or listed chemical, constituted proceeds traceable to such an exchange, and was used and intended to be used to commit or facilitate a violation of 21 U.S.C. §§ 841, *et seq*., an offense punishable by more than one year's imprisonment.

//

//

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that:

1. Process issue according to the procedures of this Court in cases of actions *in rem;*

2. Any person having an interest in said defendant currency be given notice to file a claim and to answer the complaint;

3. This Court enter a judgment of forfeiture of the defendant currency to the United States; and,

4. The Court grant such other relief as may be proper.

DATED:  3/27/17                                    PHILLIP A. TALBERT
                                                                    United States Attorney


                                                           By:    /s/ Kevin C. Khasigian
                                                                    KEVIN C. KHASIGIAN
                                                                    Assistant U.S. Attorney

## **VERIFICATION**

I, Richard J. Britt, hereby verify and declare under penalty of perjury that I am a Special Agent with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief.

The sources of my knowledge and belief are in the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date: 3-26-17

/s/ Richard J. Britt
RICHARD J. BRITT
Special Agent
Drug Enforcement Administration

(Signature retained by attorney)

# EXHIBIT A

# AFFIDAVIT OF RICHARD J. BRITT

# IN SUPPORT OF SEIZURE WARRANTS

## I. INTRODUCTION

I, Richard J. Britt, Special Agent with the Drug Enforcement Administration (DEA), presently assigned to the Sacramento District Office, being first duly sworn, statement:

1. This affidavit is submitted in support of the Government's application for the issuance of warrant to seize for civil forfeiture the following:

   Approximately $419,930.00 in U.S. Currency

2. This Affidavit is made in support of a warrant to seize the above-defined funds and/or assets pursuant to 21 U.S.C. § 881(b) incorporating 18 U.S.C. § 981(b). The items identified above are subject to civil forfeiture pursuant to 21 U.S.C. § 881(a)(6) as they represent proceeds traceable to the sale of controlled substances or funds used or intended to be used to facilitate a federal drug crime in violation of 21 U.S.C. §§ 841(a)(1). They are further subject to forfeiture under 21 U.S.C. § 881(a)(6) as they represent proceeds of illegal narcotics activities in violation of 21 U.S.C. §§ 841(a)(1) (distribute a controlled substance).

3. Specifically, the facts set forth below establish probable cause to believe that the contents of a YRC shipment bearing PRO#: 669-339144-8 were involved in the distribution of illegal narcotics and narcotic proceeds in the Eastern District of California and other areas outside of the Eastern District of California. The facts further establish that a shipment being sent via "YRC freight" bearing Bill of Lading PRO: #669-339144-8 was being sent from "Best City Steel" at 172 Scott Avenue, Brooklyn, NY 11237 to "T C Steel," ATTN: H. Chen, 2246 Jerrold Ave 1, San Francisco, CA 94124. The only telephone number associated with the recipient of the

1

shipment was 917-655-6471. A California State Search Warrant was subsequently obtained which resulted in the seizure of $419,930.00 of United States Currency (USC) from the shipment.

4. Unless stated otherwise, I have personal knowledge of the matters set out in this affidavit. To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me through my own review of the documents discussed in this affidavit and through reliable law enforcement sources, including discussions with other law enforcement agents and task force officers assigned to this case.

## II. BACKGROUND, TRAINING AND EXPERIENCE OF AFFIANT

5. I am a Special Agent with the United States Drug Enforcement Administration (DEA) and have so been employed since April 2005. I was trained as a DEA Special Agent at the DEA/FBI Academy, Quantico, Virginia. During my training, I received special training in the Controlled Substance Act, Title 21 United States Code, including, but not limited to, Sections 841(a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively.

6. I have received special training regarding criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute methamphetamine, cocaine, cocaine base, heroin, marijuana, and other dangerous drugs prohibited by law. I received further training in search and seizure law and many other facets of drug law enforcement. I have received specialized formal training in clandestine laboratory investigations and safety procedures during a forty (40) hour course at the DEA Academy, Quantico, Virginia. This training involved, but was not limited to: clandestine laboratories, identification of chemicals and other hazardous materials

2

used in the manufacture of methamphetamine, familiarization with equipment and apparatus used in the clandestine laboratory processing. I have also spoken to and worked with experienced federal, state, and municipal narcotic officers regarding the methods and means employed by drug manufacturers and drug traffickers. I have also attended a twenty four (24) hour Internet Telecommunications Exploitation Program in San Francisco, CA. This training involved, but was not limited to: learning updated trends of criminal organizations abilities to more effectively protect themselves from T-III intercepts and methods of infiltrating criminal organizations utilizing the internet. I have also attended a one week training conference in Las Vegas, Nevada dealing primarily with Asian gang culture. This training conference involved, but was not limited to: Asian gang crime within the United States and throughout the world, current trends that Asian gangs are utilizing to launder drug proceeds, the use of casinos for Asian gangs to facilitate drug transactions and large scale credit card fraud, and Asian culture and customs.

7. During the course of my employment as a DEA Special Agent, I have participated in a number of criminal investigations and have gained knowledge and experience by working with senior agents. I have participated in Federal and State search warrants involving the seizure of the aforementioned listed controlled substances, the seizure of records relating to the manufacturing and distribution of controlled substances, and other types of evidence that document the activities of drug trafficking organizations and its members. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance and various types of infiltration, including undercover agents, informants, and cooperating sources. Based on these investigations, my training and experience, and conversations with other experienced agents and law enforcement personnel, I have become

familiar with the methods used by traffickers to smuggle and safeguard narcotics, distribute narcotics, and collect and launder proceeds from narcotic transactions. The information contained in this affidavit is based upon my personal observations, observations of other law enforcement officers and my review of official police and government reports.

8. This affidavit does not contain all facts known to me regarding this investigation, but reflects only those facts necessary to establish probable cause. The statements in this affidavit are based upon my investigation, my training and experience, and the experience of other law enforcement agents with whom I have consulted.

### III. THE INVESTIGATION

9. On 12/27/2016, Detective Brett Hicks of the Tracy Police Department's Special Investigations Unit received information from a Confidential Source (CS). The CS advised Detective Hicks of a suspicious shipment being sent via "YRC freight" bearing Bill of Lading PRO: #669-339144-8 was being sent from "Best City Steel" at 172 Scott Avenue, Brooklyn, NY 11237 to "T C Steel," ATTN: H. Chen, 2246 Jerrold Ave 1, San Francisco, CA 94124. The shipment, labeled as "Metal Product" and weighing a listed 500 pounds, was comprised of one large cardboard box which contained clear packing tape wrapped around the edges. Further examination of the cardboard box revealed it to contain a plywood crate which was visible through the clear tape. The shipment was also marked "Accelerated" with expedited stickers on the outside, indicating the sender paid additional money to expedite shipping. The only telephone number on file with YRC Freight associated with the shipment, ███-6471, was assigned to the intended recipient, "H. Chen."

10. On 12/27/2016, Detective Hicks applied for and received a California State Search Warrant for the shipment from San Joaquin County Superior Court Judge Richard Vlavianos. Detective Hicks

4

then transported the shipment to the Tracy Police Department in Tracy, CA where a search of the shipment was conducted. Upon opening the shipment, Detective Hicks observed a cardboard box covering a large plywood crate which had been stapled closed. Detective Hicks opened the crate and found an orange metal job box which was locked with two separate combination locks, as well as several folded cardboard boxes. Inside the Ridgid job box, Detective Hicks observed a large black cloth sack containing nine separate vacuum sealed plastic bags, each of which contained U.S. Currency. The currency was packaged in numerous rubber band-bound stacks, some of which had paper labels indicating they were increments of $2,000. Below are pictures of the package and its contents:





11. The vacuum sealed bags were collected as evidence and transported to the Tracy Police Department for further processing. The currency was comprised of various denominations, mostly $20 bills, and totaled $419,930.00. The currency was denominated as follows: 293 $100 bills; 1,215 $50 bills; 16,487 $20 bills; and 14 $10 bills.

12. Upon arrival at the Tracy Police Department Annex, the currency was concealed out of the sight or knowledge of Detective Hicks and his K-9 partner "Boss". Detective Hicks then instructed his K-9 partner "Boss" to conduct a search of area where the currency was hidden. Upon completion of the search, Detective Hicks reported that "Boss" had positively alerted to the currency indicating the presence of the odor of narcotics.

13. On 12/28/2016, Detective Hicks transported the currency to a Wells Fargo Bank branch and converted the cash into a cashier's check, which was later booked into evidence at the Tracy Police Department. While transferring the currency to the bank, Detective Hicks could smell a pungent odor of marijuana emanating from the currency.

14. On 12/28/2016, Detective Hicks placed a recorded telephone call to telephone number ▮▮▮-6471, the number associated with the shipment in question. An apparent male voice answered the telephone and Detective Hicks asked if the person who answered the telephone was "Chen." The male stated, "No." Detective Hicks stated to the unknown male that he was calling about the YRC shipment associated with this telephone number and then again asked if he was speaking with Chen. The male now stated that his name was Chen, further stating that his first name was "Han." Detective Hicks then identified himself as a police officer and asked Chen if there was any reason a narcotic trained K-9 would alert to the shipment or if there was anything illegal or unsafe inside.

6

Chen stated that he didn't think there was anything illegal inside. (It should be noted that Detective Hicks was having difficulty understanding Chen due to his heavy accent.) Detective Hicks asked Chen if there was any Marijuana, Heroin, Cocaine or Methamphetamine inside the shipment. Chen stated there was not.

15. Detective Hicks then asked Chen if he expected any money inside the shipment and Chen stated, "No, no, I don't know." Chen explained the package was from New York and contained only a toolbox. Detective Hicks told Chen that he (Detective Hicks) had opened the shipment and found money inside, and he again asked Chen why somebody would have sent him money. Chen responded, "Really?" Detective Hicks asked for Chen's date of birth to better ascertain his connection to the shipment. Chen declined to answer, saying that information was "private." Chen refused to say if the seized cash was his, and asked Detective Hicks to call him tomorrow. When Detective Hicks again asked Chen if he was expecting money in the shipment, Chen stated, "No, no, no." Chen then again refused to provide Detective Hicks with his identifiers and hung up the telephone.

16. On January 12, 2017, I performed a query of the Lexis-Nexis Law Enforcement Solutions search engine and learned that there was an individual by the name "Han Chen", A.K.A "Hanhe Chen", date of birth ▮▮▮▮▮, associated with the address located at 2246 Jerrold Avenue, Suite #1, San Francisco, CA. The 2246 Jerrold Avenue address is the same address listed for "H. Chen" on the shipment containing the $419,930 in cash. The same query revealed that Han Chen is associated with the business entity "T C Steel" located at 4833 Mission Street, San Francisco, CA, the same entity which was also listed as a recipient of the shipment. There were also several additional addresses associated with the entity "T C Steel" located in San Francisco, Emeryville, Petaluma,

and Upland, CA, however it is unknown if "T C Steel" is a legitimate business at this time during the ongoing investigation. On January 17, 2017, I performed a Google query of "T C Steel" and learned that the company appeared to have no formal website. I then called the online listed telephone number associated with "T C Steel." The telephone call was answered by a male voice who simply said "Hello?", to include nothing about "T C Steel" in his greeting.

17. I then performed both a Lexis-Nexis Law Enforcement Solutions query, as well as a Google query of the sender of the shipment, "Best City Steel" located at 172 Scott Avenue, Brooklyn, NY. I could not find any legitimate business record in the name "Best City Steel" or any association with the address listed for it.

18. Based on my training and experience, I believe the funds located in the YRC Freight shipment bearing a Bill of Lading PRO: #669-339144-8 are drug proceeds from the sale of illegal narcotics. I know that that the use of heat-seal vacuum bags is common among drug traffickers to conceal narcotics odor from police K-9s. I know that the rubber-banding together of currency is a common method among drug traffickers to package their narcotics proceeds. I also know bulk currency smuggling is a common method among drug traffickers to transport their illicit funds and proceeds. Furthermore, based on my training and experience, it is common for drug traffickers involved in distributing marijuana to purchase or cultivate marijuana in areas such as Northern California were marijuana is grown in abundance and shipped to states to the east where marijuana can be sold at a higher price because the marijuana is not as readily available in those states and the narcotic proceeds then shipped back to California. Through my training and experience I know that similar packages/crates are often used to conceal drugs and/or drug proceeds when they are sent from their source to destination or vice versa. Finally, a trained and

certified narcotics canine alerted to the shipment for the presence of a narcotic odor. The K-9 later alerted to the US Currency for the presence of a narcotic odor

## IV. CONCLUSION

19. Based upon the events and evidence outlined in this Affidavit, my training and experience, and the training and experience of the agents that I have consulted with in preparing this Affidavit, there is probable cause to believe that the funds located in the YRC Freight shipment bearing a Bill of Lading PRO: #669-339144-8 were drug proceeds from the sale of illegal narcotics and that "H. Chen" was working to illegally transport narcotics proceeds across the country.

20. I request the issuance of a seizure warrant against the following property as proceeds from the distribution and sale of narcotics:

   a. Approximately $419,930.00 in U.S. Currency.

Richard J. Britt
Special Agent
Drug Enforcement Administration


Reviewed and approved as to form:

Kevin C. Khasigian
Assistant United States Attorney


Subscribed and sworn to before me
this 25th day of January, 2017.

Edmund F. Brennan
United States Magistrate Judge

9